

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| BERNARD BROWN, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 8:08-3761-HFF-BHH |
| | § | |
| DIRECTOR SCDC; ROBERT WARD; | § | |
| and ROBERT BOLLINGER, | § | |
| Defendants. | § | |
| | § | |

## ORDER

This case was filed as an employment discrimination and retaliation action. The matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting that Defendants' motion for summary judgment be granted. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

## I. SUMMARY OF THE FACTS[1]

In 1989, Captain Bernard Brown (Plaintiff), an African-American male, was hired as a correctional officer at the Trenton Correctional Institution (TCI), a subsidiary of the South Carolina Department of Corrections (SCDC) prison system. Plaintiff brought this employment discrimination and retaliation action against the Director of SCDC, Robert Ward, the Director of Operations at TCI (Defendant Ward) and Robert Bollinger, the Warden of TCI (Defendant Bollinger). Between 1999 and 2002, Plaintiff submitted three anonymous letters to human resources to report racist attitudes in the workplace.

In late 2005, Plaintiff began a friendship with one of his subordinates, Sergeant Valerie Thomas (Thomas). Discrepancies exist about the nature of this relationship, but it is undisputed that in August 2006, Thomas filed sexual assault charges against Plaintiff, and he was placed on administrative leave by SCDC. After Plaintiff began his leave, he submitted to human resources in October 2006 a signed letter regarding his concerns about racist treatment. In early 2008, Plaintiff was acquitted of all criminal charges.[2] In May of the same year, Plaintiff was terminated following a four-month SCDC internal investigation.

## II. CONTENTIONS OF THE PARTIES

As noted above, Plaintiff is suing Defendants under Title VII of the Civil Rights Act of 1964 for racial discrimination and for retaliation under 42 U.S.C. § 1983. Plaintiff constructed his Title VII case under the *McDonnell Douglas* burden-shifting framework. The first part of the framework

---

[1] A more detailed account of the facts are included in the Report.

[2] Plaintiff relies on his acquittal as evidence of racial discrimination in this lawsuit. An acquittal of criminal charges, however, has little sway, if any, where civil burdens are concerned. *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 235 (1972).

requires a plaintiff to establish a prima facie case of discrimination. If a plaintiff fails to do this, then he is not entitled to relief. As more recently articulated by the Court of Appeals for the Fourth Circuit, to establish a prima facie case under *McDonnell Douglas*, a plaintiff " must show that: (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." *Bryant v. Bell Atl. Maryland, Inc.,* 288 F.3d 124, 133 (4th Cir. 2002).

Plaintiff pleads that he (1) is an African-American, (2) was qualified because he worked in correctional institutions for almost two decades, and (3) was terminated. These contentions are undisputed and establish the first elements of a *McDonnell Douglas* prima facie case. In support of the final element, Plaintiff offers the similarly situated and more favorably treated Sergeant Clyde Holmes. Holmes, a Caucasian male, admitted to sexually assaulting another officer and was reprimanded, not terminated.

Plaintiff also points to three other pieces of evidence in an effort to avoid summary judgment:

1. Defendant Bollinger's use of the "n-word" in Plaintiff's presence;

2. The testimony of Lt. Cybil Brown who asserts that TCI permitted racially discriminatory practices; and

3. Multiple letters to human resources regarding concerns about racial inequality. Plaintiff argues that the letters circumstantially prove that racial discrimination existed because the letters would not have been written if a problem did not exist.

As did the Magistrate Judge, the Court will consider this evidence within a liberally-construed *McDonnell Douglas* framework. However, as noted below, this evidence could also be considered outside of *McDonnell Douglas* as direct or circumstantial evidence of racial discrimination. *See*

3

*Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (noting that there are two ways a plaintiff may avoid summary judgment: (1) *McDonnell Douglas* framework or (2) by presenting direct or circumstantial evidence that race motivated the adverse decision).

As for his retaliation claim, Plaintiff relies on anonymous letters from 1999 to 2002 and the October 2006 letter to prove his termination was a retaliatory action by Defendants.

Defendants contend that the decision to terminate Plaintiff was not based on his race or in retaliation for the letters he wrote. Instead, they argue multiple legal non-discriminatory reasons for terminating Plaintiff, such as his failure to report criminal activities of subordinates and accusations that Plaintiff acted inappropriately with subordinate officers. Defendants insist that their decision was based on Plaintiff's "serious miscalculations of judgment that affected the well being of staff at that institution." (Ward Dep. 134:15-25).

The Magistrate Judge filed the Report on May 28, 2010, Plaintiff filed objections to the Report on July 14, 2010, and Defendants filed a reply on July 27, 2010. Plaintiff raised the following objections to the Report:

1. The Magistrate Judge erred when she found, as a matter of law, that Sergeant Clyde Holmes was not a similarly situated comparator for the purpose of establishing Plaintiff's prima facie case of race discrimination.

2. The Magistrate Judge erred when she found that the evidence proffered by Plaintiff fails to raise an inference of discrimination.

3. The Magistrate Judge erred when she found that Plaintiff could not establish a causal link between any protected speech and his termination.

Each objection will be addressed in turn.

## III. DISCUSSION AND ANALYSIS

After reviewing the Report, the objections, and the record, the Court concludes that Plaintiff has failed to establish a prima facie case of racial discrimination. Moreover, Plaintiff also failed to establish that Defendants retaliated against him for exercising his First Amendment right of free speech.

**1. Whether the Magistrate Judge erred when she found, as a matter of law, that Sergeant Clyde Holmes was not a similarly situated comparator for the purpose of establishing Plaintiff's prima facie case of race discrimination.**

Plaintiff insists that he is similarly situated with Sergeant Clyde Holmes (Holmes). However, after considering their respective ranks, responsibilities, and the circumstantial events surrounding Plaintiff's employment and release, the Court disagrees. Despite some correlations, Plaintiff and Holmes were not similarly situated; therefore, the different treatments do not suggest racial discrimination.

### a. *Plaintiff's prima facie case*

To establish a prima facie case under the *McDonnell Douglas* test, a plaintiff may compare himself to another employee (comparator) who is not a member of the plaintiff's protected class and who was treated more favorably than the plaintiff in similar circumstances. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973). Successful comparisons may illuminate a defendant's racist nature. *Id.* at 804. To validate a comparator, a plaintiff must "establish that 'other employees' were similarly situated in all relevant aspects; that they 'dealt with the same supervisor [and] [were] subject to the same standards.'" *Ward v. City of N. Myrtle Beach*, 457 F. Supp. 2d 625, 643 (D.S.C. 2006) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

A factor that may distinguish a plaintiff from a comparator is their respective ranks. *Brillinger v. City of Lake Worth*, 317 Fed. Appx. 871, 876 (11th Cir. 2008)*; Carr v. Wisconsin Dept. of Corr.*, 129 Fed. Appx. 306, 310 (7th Cir. 2005)*; see also Haywood v. Locke*, No. 09-1604, 2010 WL 2711294, at *2-3 (4th Cir. July 6, 2010) (noting that plaintiff must prove that comparator's position is similarly situated). As in *Haywood*, Plaintiff wants to establish the closest nexus possible to his comparator. Here, however, Plaintiff was a captain, two ranks superior to Holmes' title of sergeant. Plaintiff emphasizes the para-military structure of TCI in an attempt to close the gap between his and Holmes' ranks. Yet, without more details to illustrate the similarities, this shallow argument fails to further his prima facie case.

Perhaps more importantly, the additional responsibilities that come with the position of captain undermine Plaintiff's argument that he and Holmes are similarly situated. "Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees." *Vasquez v. Country of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). Further, control over lower ranking personnel signals that a plaintiff and comparator are unequal. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802-04 (6th Cir. 1994) (holding that the difference between a "supervisory and non-supervisory" position is relevant to determining similar circumstances). In *Pierce*, the plaintiff "was a supervisor and [comparator] was not; [plaintiff] had responsibility over three offices, whereas [comparator] was an 'office administrator' with no supervisory control." *Id.* at 802. Likewise in this case, the degree of responsibility is significantly different. As one of five captains at the prison, Plaintiff was a leader entrusted with the security of the prisoners, the institution, and the supervision of twenty officers. Holmes possessed none of these responsibilities. Therefore,

Plaintiff's comparator is not similarly situated to him. *See Vasquez*, 349 F.3d at 641 (noting that employees of different ranks are not similarly situated).

Additionally, though Plaintiff and Holmes were accused of similar conduct, the circumstances surrounding Plaintiff's conduct were significantly different. A plaintiff must show that " 'other employees' . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ward*, 457 F. Supp. 2d at 643 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Plaintiff's alleged assault and Holmes' assault were essentially "the same conduct." *Id.* However, *Ward* considers not only the "conduct" but the "circumstances" as well. *Id.* Plaintiff directly managed his accuser, whereas Holmes was not his victim's supervising officer nor in her direct chain of command. Holmes failed to report his actions against a lower ranking officer. Plaintiff failed to report another lower ranking officer's criminal actions. Specifically, Plaintiff's accuser, Ms. Thomas, allegedly discussed private details of her life and solicited sexual favors for money. Even if Plaintiff felt Ms. Thomas' discussion of intimate stories did not justify a timely report to his supervisor, her alleged criminal proposition of prostitution should have. These details exacerbate Plaintiff's situation, distinguishing his circumstances from Holmes.'

Any substantial variance– such as title, responsibilities, or actions– may derail a plaintiff's similarity argument. *Ward,* 457 F. Supp. 2d at 643; *Brailsford v. Square D*, No. 3:06-608, 2007 WL 2022196, at *6 (D.S.C. July 9, 2007). Plaintiff fails to refute that, because of his rank, he was held to higher professional standards than Holmes. *See Ward*, 457 F. Supp. at 643 (adopting the Sixth Circuit's standard that a plaintiff must establish that a comparator was subject to the same professional standards to be considered similarly situated). Defendants, because of Plaintiff's rank,

treated his "serious miscalculations of judgment" differently than Holmes' choices. (Ward Dep. 134:15-25.) Because he fails to successfully establish a comparator, no genuine issue of material fact arises from Defendants' different treatments of Plaintiff and Holmes.

> **2. Whether the Magistrate Judge erred when she found that the evidence proffered by Plaintiff fails to raise an inference of discrimination.**

In addition to arguing a comparator's favorable treatment, construed liberally a plaintiff may introduce other evidence to illustrate racial discrimination under the fourth prong of the *McDonnell Douglas* prima facie case. *Autry v. North Carolina Dep't of Human Resources*, 820 F.2d 1384, 1385-86 (4th Cir. 1987). Plaintiff objects to the Magistrate Judge's finding that other evidence presented was insufficient to create a prima facie case. He asserts that the single use of the "n-word" raises a genuine question of material fact as to whether Defendant Bollinger is racist. Plaintiff also believes that Lt. Cybil Brown's testimony provides a basis for inferring that the management of SCDC is racist. Finally, Plaintiff suggests that Defendants' receipt of three anonymous letters regarding a racist environment is evidence of discrimination at TCI.[3] The Court disagrees with Plaintiff on all three counts.

> *a. Single use of a racial epithet*

Plaintiff insists Defendant Bollinger is racist because he once used the "n-word." The "[u]se of racial aspersions obviously provides an indication that the speaker might be more likely to take race into account in making a hiring or membership decision." *Mullen v. Princess Anne Volunteer Fire Co., Inc.*, 853 F.2d 1130, 1133 (4th Cir. 1988). However, the Fourth Circuit separates general use of epithets from the single use of a slur. *Belton v. City of Charlotte*, 175 Fed. Appx. 641, 657

---

[3] The letters are analyzed in the following section.

(4th Cir. 2006) ("As odious as these [slurs] were, however, they were isolated and are now remote in time. They occurred during one exchange with [the plaintiff] . . . . As such, they cannot sustain [the plaintiff's] . . . claim."); *see also Riscili v. Gibson Guitar Corp.*, 605 F. Supp. 2d 558, 566 (S.D.N.Y. 2009) ("The Fourth Circuit, for instance, has held that no objectively reasonable person could believe that [plaintiff] was working in a hostile work environment based on a single, albeit shockingly racist, remark." (citing *Jordan v. Alternative Ress. Corp.*, 458 F.3d 332, 336, 341 (4th Cir. 2006)). The Court finds the use of derogatory comments distasteful and scornful. However deplorable a word may be, Plaintiff overhearing Defendant Bollinger use one slur in approximately nine years fails to raise a genuine issue of material fact regarding Defendant Bollinger's allegedly racist propensities. Furthermore, Defendant Bollinger's use was not directed at nor was it about Plaintiff in any respect. *See Patel v. Midland Memorial Hospital & Medical Center*, 298 F.3d 333, 344 (5th Cir. 2002) (noting that when racial slurs are not referencing a plaintiff, the usage is not immediately connected to the defendant's action against the plaintiff).

Also, Plaintiff's reliance on *Mullen* is misplaced. In *Mullen,* the Fourth Circuit recognized that when an employer "routinely used racial slurs and epithets" in the workplace, racist qualities could be attributed to that employer. *Mullen*, 853 F.2d at 1131. In contrast to *Mullen*, Defendant Bollinger used the "n-word" once. A single use is not "routine" and, thus, cannot be used to paint Defendant Bollinger as a racist. Finally, Plaintiff fails to connect the use of this word to his termination. His speculation, without more, fails to raise an issue of fact. *See Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) ("[Plaintiff's] own naked opinion, without more, is not enough to establish a prima facie case.").

### b. Coworker's testimony

Lt. Cybil Brown (Brown) testified that she believed that Defendants were racist. Courts have ruled that a coworker's testimony fails to raise an inference of racial discrimination unless supported by facts that reasonably lead to the opinion. *See Hester v. BIC Corp.*, 225 F.3d 178, 182 (2nd Cir. 2000) ("[I]n an employment discrimination action, Rule 701(b) bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision."). Brown offered no persuasive examples or explanations to bolster her opinion, though she did offer the example of Officer McDaniel. McDaniel, a Caucasian female, violated SCDC protocol and, in Brown's belief, was punished less harshly because of her race. This testimony, however, does not further Plaintiff's position because it: (1) is Brown's impression of the incident; (2) offers only speculation as to why McDaniel may have been treated favorably; (3) does not compare McDaniel to an employee in a protected class; and (4) fails to connect the perceived racism to Plaintiff and his termination. Her testimony, in the absence of more specific details, comparisons, and a connection to the adverse action cannot reasonably suggest Defendants are racist. *See Stevens v. Del Webb Cmtys. Inc.*, 456 F. Supp. 2d 698, 710 (D.S.C. 2006) ("[The coworker's] statement, standing alone, does not raise a genuine issue of material fact . . . especially in light of the fact that none of [her] assertions in any way relate to Plaintiff's termination."); *Hester*, 225 F.3d at 182 (rejecting coworker's conclusory opinion because it did not provide a basis from which one could reasonably infer that defendant acted under racist pretenses).

Finally, Plaintiff's use of the anonymous letters is unpersuasive. Like many of his other arguments, Plaintiff has failed to connect the letters to Defendants' alleged discrimination. Further, he cannot rely on the baseless assertion that because complaint letters exist, racial disparity existed.

No additional evidence raising a question of material fact was presented as required to establish the *McDonnell Douglas* prima facie case. Therefore, as noted above, Plaintiff failed to meet his burden of establishing a prima facie case of discrimination.

For the same reasons, to the extent that the Court were to construe the arguments in this section as direct evidence of discrimination outside of the *McDonnell Douglas* framework, Defendants are entitled to summary judgment.

*c.     Legal non-discriminatory reason and pre-text*

Plaintiff failed to carry his burden of establishing a prima facie case of racial discrimination. *See McDonnell Douglas*, 411 U.S. at 802. (requiring that plaintiffs satisfy the four prongs of the prima facie case to proceed). Therefore, the Court need not review the merits of Defendants' legal non-discriminatory reason nor Plaintiff's arguments that Defendants' reason for terminating him were pretextual. *See Karsten v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) (warning courts of "the tempting opportunity to stray into the practice of advisory opinion-making" when the first argument's analysis is sufficient to resolve the matter).

**3.     Whether the Magistrate Judge erred when she found that Plaintiff could not establish a causal link between any protected speech and his termination.**

Plaintiff's third objection focuses on the Magistrate Judge's conclusion that he failed to connect Defendants' adverse decision to his complaint letters. Plaintiff's argument focuses on both the anonymous letters written between 1999 and 2002 (anonymous letters) and Plaintiff's October 2006 letter (October letter). The Court agrees with the Magistrate Judge that none of the letters are sufficiently linked to Plaintiff's termination to support a retaliation claim. As noted above, Plaintiff also relies on these letters to support an inference that discrimination existed at TCI. For the reasons discussed below, this argument also fails.

11

### a. Anonymous letters written prior to 2002

Between 1999 and 2002, Plaintiff wrote three anonymous letters reporting his belief that racial discrimination existed at TCI. He contends that these letters, when connected to him through his October 2006 submission, encouraged Defendants' retaliation against him. The use of anonymous letters is permitted to show retaliation if authorship can reasonably be confirmed. *See Cromer v. Brown*, 88 F.3d 1315, 1326 (4th Cir. 1996) (allowing officer who was a member of an all African-American association to claim partial authorship for anonymous letter signed by the group, because all members were of a protected class, thus an employer could retaliate against any member). However, in this case Plaintiff cannot adequately establish his authorship. He tries to connect the anonymous letters to himself primarily by comparing their content with that of the October letter.[4] This is a theory of why Defendants might have attributed the anonymous letters to Plaintiff, but it is far short of reasonably establishing a link to the adverse action.

Even if Plaintiff managed to establish that Defendants were aware of his authorship, he would still have to overcome a temporal proximity problem. The Court has previously held that a delay of several years between the exercise of protected speech and an adverse action removes an assumption of causation for retaliation. *Robinson v. City of Greenville*, No. 6:02-2533-HFF, 2004 WL 3262757, at *13 (D.S.C. May 26, 2004). In a light most favorable to Plaintiff, the anonymous letters were sent, at a minimum, six years prior to his termination. Though "several" is ambiguous,

---

[4] Plaintiff also believes that a complaint to a superior, not a confession of authorship, may have revealed his identity as the author. This fact supports the suggestion that Defendants had knowledge that Plaintiff exercised his First Amendment right, but it stops short of showing that Defendants used this information to retaliate against him.

no reasonable person would equate six years with "several" years. As noted in the Report, this lapse in time between the letters and the retaliation undercuts Plaintiff's causation argument.

Additionally, once authorship is confirmed, "a causal relationship between the protected expression and the retaliation" must be established. *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 352 (4th Cir. 2000). A plaintiff may use direct or circumstantial evidence to bridge this causal gap. *Price v. Thompson*, 380 F.3d 209, 212-13 (4th Cir. 2004). Plaintiff, in this case, fails to connect the anonymous letters to the adverse action and, therefore, his retaliation claim cannot succeed as presented. *See Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) (discussing need for causal connection between protected activity and adverse action).

### b. October 2006 letter

Plaintiff's argument regarding the October 2006 letter also fails. Plaintiff relies on a Fourth Circuit decision that allows a nine-month window in which a plaintiff may connect his protected speech to his dismissal. *Constantine*, 411 F.3d at 501 (citing *Price*, 380 F.3d at 213). In this case, at least eighteen months elapsed, destroying any temporal connection. Plaintiff argues that the precedent is too rigid and that the Court should toll the time period while his criminal trial proceeded. However, the Court need not decide the tolling question because, even if the October letter is treated as temporally proximate to Plaintiff's termination, Plaintiff fails to connect the letter to Defendants' decision. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("[Plaintiff] cannot establish the necessary causal connection between her filing a complaint with the EEOC and her termination. It necessarily follows, therefore, that [Plaintiff] cannot establish a prima facie case of retaliation."). A plaintiff "must have evidence from

13

which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action." *Id.* at 657. Further, "[k]nowledge alone . . . does not establish a causal connection between" protected speech and an employer's decision. *Price*, 380 F.3d at 213. Plaintiff's conclusory allegation without more fails to establish that Defendants acted because of Plaintiff's October letter.

## IV. CONCLUSION

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules Plaintiff's objections, adopts the Report and incorporates it herein. Therefore, it is the judgment of this Court that Defendants' motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED**.

Signed this 5th day of August, 2010, in Spartanburg, South Carolina.

s/ Henry F. Floyd<br>
HENRY F. FLOYD<br>
UNITED STATES DISTRICT JUDGE